IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARY BLOODSWORTH and    )
JERRY BLOODSWORTH,      )
                        )
         Plaintiffs,    )
                        )
vs.                     )   CIVIL ACTION NO. 2:05cv622-D
                        )
SMITH & NEPHEW, et al., )
                        )
         Defendants.    )

**MOTION TO REMAND**

Come now Mary Bloodsworth and Jerry Bloodsworth and, pursuant to 28 U.S.C. § 1447(c), move this Court to remand the above-styled matter back to the Circuit Court of Montgomery County, Alabama. In support of this motion to remand, plaintiffs state as follows:

Complaint

1. On May 31, 2005, in the Circuit Court of Montgomery County, Alabama, plaintiffs commenced this civil action by filing a complaint, in which the named party-defendants were Smith & Nephew; Spar Medical, Inc.; and Donnie Lanier.

2. Mary Bloodsworth, Jerry Bloodsworth, and Donnie Lanier were described as residents of Montgomery County, Alabama. Complaint ¶¶ A, B & E.

3. The Bloodsworths factually alleged that, on June 2, 2003, Mary Bloodsworth underwent a left total hip arthoroplasty, the implanting of a prosthetic hip; that, thereafter,

she suffered several hip dislocations that necessitated several operative procedures, including one involving the implanting of a "retaining lining and ring;" and that, on June 15, 2004, after another hip dislocation, she "underwent a surgical revision of the left toal hip arthroplasty, at which time the retaining lining and ring and other components of the hip prosthesis were replaced." Complaint ¶ G.  The Bloodsworth further factually alleged that the components of the hip prosthesis implanted on June 2, 2003, as well as the later implanted retaining lining and ring "were manufactured, distributed, marketed, promoted, and sold by Smith & Nephew, Spar Medical, and [Donnie] Lanier." Complaint ¶ H.  Among other things, the Bloodsworths additionally alleged (a) that the subject products were "in a defective condition and [were] unreasonably dangerous when applied to [their] intended use in the usual and customary manner" (Complaint ¶ 1); (b) that the named defendants failed to properly "advise[ ] customers (including Mrs. Bloodsworth's surgeon, who was a learned intermediary) with respect to both the indications for, and the risks and benefits of, the product[s]" (Complaint ¶ 3); (c) that the named defendants "failed to adequately advise consumers (including Mrs. Bloodsworth's surgeon) that [these] product[s] could cause injury to individuals in whom [they] could be implanted" (Complaint ¶ 6); (d) that the named defendants "misrepresented the dangers of using [these] product[s]" (Complaint ¶ 7); and (e) that, in marketing or promoting these products, the named defendants "failed to adequately warn consumers of the dangers associated with the use of the product[s]" (Complaint ¶ 8). Mary Bloodsworth asserted several causes of action against all three named party-defendants: (a) liability pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); (b) negligence or wantonness in the manufacture, distribution, marketing, promoting, and

selling of products; (c) negligently or wantonly advising customers, including her surgeon, a learned intermediary, regarding "both the indications for and the risks and benefits of the product[s];" (d) breach of the implied warranty of merchantability; (e) breach of the implied warranty of fitness; (f) suppression; (g) willful, reckless, or negligent misrepresentation; (h) negligently or wantonly failing "to adequately warn customers of the dangers associated with the use of the product[s];" and (i) wrongful promotion of the product. Complaint ¶¶ 1-9. Jerry Bloodsworth asserted a claim for the loss of his wife's consortium. Complaint ¶ 11.

### Notice of Removal

4. On July 1, 2005, Smith & Nephew alone filed a Notice of Removal.

5. Smith & Nephew asserted a single source of federal subject-matter jurisdiction, namely diversity-of-citizenship jurisdiction. Notice of Removal ¶ 3.

6. Smith & Nephew noted that service of process had not yet been perfected on Spar Medical. Notice of Removal ¶¶ 2 & 10. In addition, Smith & Nephew alleged that, "although Spar [Medical] is an Alabama corporation," it has been fraudulently joined as a party-defendant because, according to Smith & Nephew, "Spar [Medical] was not part of the distribution chain of the products made the subject of this action." Notice of Removal ¶¶ 11-12 (relying on Donnie Lanier's Affidavit, submitted along with the Notice of Removal).

7. While stating that Donnie Lanier "was an independent contractor who worked as an orthopedic device representative for Smith & Nephew," Smith & Nephew asserted that Donnie Lanier was fraudulently joined as a party-defendant because "[t]here is no

reasonable basis for predicting that Donnie Lanier would be held liable because, under Alabama law, there is no cause of action against product representatives for injuries caused by the products they represent." Notice of Removal ¶¶ 13-14. Smith & Nephew asserted that, as to the AEMLD claim and claims of negligence and wantonness, there is no "causal connection between Donnie Lanier's activities and the allegedly defective condition of the products," relying on the AEMLD's "no causal connection" affirmative defense. Notice of Removal ¶¶ 15-16. Smith & Nephew criticized the lumping of Donnie Lanier with the other two named party-defendants and the failure to assert individualized claims against him. Notice of Removal ¶¶ 17-18. As to the suppression and misrepresentation claims, Smith & Nephew asserted a failure to satisfy the pleading requirements of Rule 9(b) of the Alabama Rules of Civil Procedure and Rule 9(b) of the Federal Rules of Civil Procedure. Notice of Removal ¶ 19. Relying on statements made by Donnie Lanier in his affidavit, Smith & Nephew asserted that the suppression claim and the failure-to-warn claim lack merit because Donnie Lanier denied having "knowledge of any alleged defects in the products used in [Mary] Bloodsworth's surgeries." Notice of Removal ¶¶ 20-21. Smith & Nephew asserted that Donnie Lanier cannot be held liable under the breach-of-implied-warranties claims because he was not the seller of the subject products. Notice of Removal § 22.

8. If Spar Medical and/or Donnie Lanier have not been fraudulently joined, there is an absence of complete diversity because both, like the Bloodsworths, are Alabama residents.

4

## General Legal Principles

9. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994).

10. Removal statutes must be strictly construed because Congressional intent in enacting removal legislation was to restrict removal jurisdiction. Shamrock Oil & Gas Corp. v. Streets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 2d 1214 (1921); Lane v. Champion Internat'l Corp., 827 F. Supp. 701, 705 (S.D. Ala. 1993).

11. Because federal removal jurisdiction is very limited, the remanding of a removed case is favored where the existence of federal subject-matter jurisdiction is not absolutely clear. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (1994). See also Russell Corp. v. American Home Assurance Co., 264 F.3d 1040 (11th Cir. 2001)(Because removal statutes must be construed narrowly, "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." 264 F.3d at 1050 (citing Burns)). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." Klempner v. Northwestern Mut. Ins. Co., 196 F. Supp. 2d 1233, 1237 (S.D. Fla. 2001) (citations omitted).

12. The removing party bears the burden of demonstrating the existence of federal jurisdiction. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 660 L. Ed. 2d 144 (1921). Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing party has the burden of proving any asserted fraudulent joinder.

Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), cert. denied, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964).

13. In determining whether a colorable claim is asserted against a non-diverse defendant, the court must "evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Pacheo de Perez v. AT&T Co., 139 F.3d. 1368, 1380 (11th Cir. 1998). "[I]f there is even a possibility that [a] state court would find that the complaint states a cause of action against any ... resident defendant, [a federal court must] find that joinder was proper and remand [the] case to state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)(emphasis in original). The "jurisdictional inquiry [in addressing an assertion of fraudulent joinder] 'must not subsume substantive determination.' ... When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)(citation omitted).

### Pleading Deficiencies

14. In asserting that Donnie Lanier was fraudulently joined, Smith & Nephew seek to rely on several perceived pleading deficiencies in the Bloodsworths' complaint,

including the lumping of all defendants together; not asserting specific causes of action against Donnie Lanier individually; and, as to submission and misrepresentation claims, failing to comply with the enhanced pleading requirements of Rule 9(b).

15. On July 27, 2005, in granting a motion to remand, Judge Lynwood Smith wrote: "Defendants, however, misstate the applicable standard. It is not sufficient for defendants to show, as they have attempted to do here, that plaintiff *did not* state a claim against [the non-diverse defendant]; instead, defendants must satisfy the heavier burden of showing that plaintiff *cannot possibly* state a claim against that [non-diverse] defendant. Thus, a mere deficiency in plaintiff's pleading against [the non-diverse defendant] – a deficiency that could be cured by a more definite statement – does not necessarily establish fraudulent joinder, as long as plaintiff has the *possibility* of stating a *colorable* cause of action against that [non-diverse] defendant." Hamrick v. Provident Life and Accident Ins. Co., CV-05-S-878-NE, Slip Op. at 8 (N.D. Ala. Jul. 27, 2004) (citation omitted; emphasis in original; copy attached hereto and marked as "Exhibit A").

16. While Judge Smith was specifically addressing a Rule 9(b)-based challenge to the pleading of fraud-based claims, his statement is applicable to any challenge predicated on a pleading deficiency, including lumping defendants together.

17. Judge Smith relied on language in this Court's opinion in Mays v. United Ins. Co. of Am., 853 F. Supp. 1386, 1388 (M.D. Ala. 1994), as well as, on several "on-point" opinions from other jurisdictions. Waterloo Coal Co. v. Komastu Mining Systems, Inc., 2003 WL 124137 (S.D. Ohio Jan. 9, 2003); Momans v. St. John's Northwestern Military Academy, Inc., 2000 WL 33976543 (N.D. Ill. Apr. 29, 2000);

Boydstun Metal Works, Inc. v. Parametric Technology Corp., 1999 WL 476265 (D. Ore. May 19, 1999).

18.  Smith & Nephew asserts no pleading obstacle, such a statute-of-limitations problem, that cannot be remedied by amending the complaint to state claims with more particularity or to assert individualized claims against each named defendant.  As held in Hamrick and the opinions cited therein, a federal court should remand a case when any technical pleading deficiencies can be eliminated by amendment because a state court would liberally allow such amending, as opposed to granting a dismissal of the non-diverse defendant.  In the present matter, all suggested pleading deficiencies are correctable by amendment.

### Colorable Claims Against Spar Medical and/or Donnie Lanier

19.  The Bloodsworths do not have to establish that Spar Medical and/or Donnie Lanier are viable defendants as to all asserted causes of action.  Instead, they need only demonstrate that a single colorable claim can possibly be stated against Spar Medical and/or Donnie Lanier.

20.  Based on pre-filing investigation, plaintiffs' counsel concluded that Spar Medical was involved in the distribution of Smith & Nephew products, including the products involved in this litigation.  Discovery will be required to verify this conclusion. Donnie Lanier's affidavit does not mention Spar Medical.  Expressly, under the AEMLD, a distributor or retailer, and not just the manufacturer, may be held legally liable for supplying a defective or unreasonably dangerous product.  Casrell v. Altec Indus., Inc., 335 So. 2d 128, 132 (Ala. 1976).  To be involved in a product's "stream of commerce," it

is not required that the distributor ever actually handled the product or the money paid by the customer. A distributor's liability is predicated on its participation in the marketing or selling of the product, for example, soliciting sales of the product. Therefore, if the Bloodsworths are correct in asserting that Spar Medical was involved in the distribution of the subject products, then they can state, and have stated, a colorable claim against Spar Medical, a claim, which, if ultimately proved, would allow them to recover monetary damages from Spar Medical. Presently, it is not possible to find that Spar Medical was fraudulently joined.

21. The Bloodsworths believe that, based on the present complaint, there is more than ample justification to find that colorable claims have been asserted against Donnie Lanier. As previously discussed, any pleading deficiencies are correctable. Alternatively, if this Court is not presently convinced that a remand is warranted based on the arguments contained herein, the Bloodworths request that they be allowed to conduct limited discovery, especially deposing Donnie Lanier regarding the statements made in his affidavit, before ruling on this motion to remand.

22. In his affidavit, Donnie Lanier stated that, in 2003 and 2004, he "was an independent contractor who worked as an orthopedic device representative for Smith & Nephew." Affidavit of Donnie Lanier ¶ 1. Donnie Lanier further stated that physicians placed orders with him for Smith & Nephew products. Affidavit of Donnie Lanier ¶ 2. Donnie Lanier does not deny involvement with the component parts implanted in Mary Bloodsworth. Affidavit of Donnie Lanier ¶ 3. Donnie Lanier stated that he has "no knowledge of any design or manufacturing defect in the Smith & Nephew products used in [Mary] Bloodsworth's procedures." Affidavit of Donnie Lanier ¶ 5. Donnie Lanier

denied ever speaking to Mary Bloodsworth.  <u>Affidavit of Donnie Lanier</u> ¶ 5.  Donnie Lanier does not denying speaking with Mary Bloodsworth's surgeon.

23.  Donnie Lanier's affidavit is very general in its language; and, of course, he was not subjected to cross-examination.  Still, Donnie Lanier effectively admits that he spoke with Mary Bloodsworth's surgeon regarding using Smith & Nephew product in his capacity as a marketing or sales representative.  Attached hereto and marked as "Exhibits B and C" are affidavits executed by Mary Bloodsworth and Jerry Bloodsworth.  Both plaintiffs testified that Dr. Hodurski, Mary Bloodsworth's surgeon, spoke of his conversations with a sales representative.  Therefore, there is ample evidence that Dr. Hodurski met with Donnie Lanier in connection with his choosing to use Smith & Nephew products in treating Mary Bloodsworth.

24.  Donnie Lanier's own description of his activities shows that he acted as a distributor or middleman in supplying Smith & Nephew products.  He was involved the "stream of commerce" and may be held liable under the AEMLD.  <u>Casrell v. Altec Indus., Inc.</u>, 335 So. 2d 128, 132 (Ala. 1976).

25.  Smith & Nephew correctly pointed out that, under the AEMLD, a non-manufacturing entity, like a distributor or retailer, may assert the lack-of-causal-relation affirmative defense.  <u>Atkins v. American Motors Corp.</u>, 335 So. 2d 134, 143 (Ala. 1976).  This is an affirmative defense for which the distributor or retailer bears the ultimate burden of proof.  This defense is not viable if the distributor or retailer "had ... knowledge of the defective condition [or] an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer."  335 So. 2d at 143.  Donnie Lanier can only escape legal accountability using this affirmative defense if there is a determination

on the merits that he did not possess superior knowledge. In ruling on this motion to remand, this Court may not make such a factual finding. The assertion of such an affirmative defense does not negate the simple fact that a colorable AEMLD-based claim has been asserted against Donnie Lanier, an admitted participant in the supplying of the subject products to Mary Bloodsworth's surgeon.

26. In Tolbert v. United Ins. Co. of Am., 853 F. Supp. 1374 (M.D. Ala. 1994), Tolbert was a very successful insurance agent employed by Union National when United acquired Union National. Tolbert accepted an offer to become a United agent. Eventually, Tolbert sued United and McDonald, United's Regional Manager for Alabama. Tolbert alleged that he had been fraudulently induced to accept that offer and detrimentally relied on misrepresentations made by McDonald and others. In holding that McDonald had not been fraudulently joined, among other things, this Court observed that, "'[i]n Alabama, the general rule is that officers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.'" 853 F. Supp. at 1377 (quoting Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So. 2d 774, 775 (Ala. 1986)). Because Tolbert alleged that McDonald personally participated in the fraud, a colorable cause of action had been asserted against McDonald individually.

27. The analysis and result in Tolbert would have been the same if McDonald had been United's agent, as opposed to employee. Under Alabama substantive law, agents, like employees, are liable for their individual tortious conduct, even though committed while acting as an agent for a principal. Donnie Lanier conferred with Dr. Hodurski, Mary Bloodsworth's surgeon. In their complaint, the Bloodsworths alleged

that Donnie Lanier failed to properly advise and/or warn Dr. Hodurski as to dangers associated with the subject products, suppressed material facts regarding the subject products, and made material misrepresentations regarding the subject products. These constitute allegations of personal tortious conduct committed by Donnie Lanier.

28.  Smith & Nephew fail to satisfy its heavy burden of demonstrating that the Bloodsworths can state no colorable claim against Donnie Lanier. Donnie Lanier's non-participation in the designing and manufacturing of the subject products would relieve him of liability as to claims predicated on the defective design or manufacture of the subject products. Yet, to the extent that Donnie Lanier personally participated in the marketing, promoting, and selling of the subject products to Dr. Hodurski, Donnie Lanier may be held legally liable under Alabama substantive law. The Bloodsworths can state colorable claims against Donnie Lanier individually; therefore, he has not been fraudulently joined.

## Concluding Remarks

29.  The Bloodsworths reserve the right to submit a memorandum brief in support of this motion to remand. In such a brief, the Bloodsworths would discuss the specific factual scenarios in the numerous opinions cited by Smith & Nephew in its notice of removal and explain in detail why those opinions are factually distinguishable and/or are inconsistent with Alabama substantive law.

30.  The Bloodsworths sued the sales representative who actually talked with Dr. Hodurski and provided him with information or misinformation regarding the Smith & Nephew products that were implanted in Mary Bloodsworth. Under Alabama substantive

law, if Donnie Lanier acted wrongfully in the course of those conversations, he may be held personally accountable. Donnie Lanier was not fraudulently joined as a party-defendant. Because Donnie Lanier is an Alabama resident, there is an absence of complete diversity. There is no source of federal subject-matter jurisdiction to support the removal to this Court. The Bloodsworths' request for a remand must be granted.

WHEREFORE, for the reasons stated herein, Mary and Jerry Bloodsworth again ask this Court to enter an order remanding this matter back to the Circuit Court of Montgomery, Alabama.

Respectfully submitted by:

_____
TOM DUTTON
Bar Number: ASB-2059-U50T
Email: tom@pittmanhooks.com
Attorney for Plaintiffs

OF COUNSEL:

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place, North
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 –fax

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing motion to remand upon all counsel of record and unrepresented parties by placing same in the United States, proper first-class postage prepaid and properly addressed, to:

James C. Barton, Jr.
Alan D. Mathis
JOHNSTON BARTON PROCTOR & POWELL LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue, North
Birmingham, Alabama 35203-2618

Spar Medical, Inc.
c/o Nancy C. Sparacio
1502 Inverness Lane
Birmingham, Alabama 35243

Done this 29th day of July, 2005.

_____
OF COUNSEL