IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MARY BLOODSWORTH and JERRY BLOODSWORTH,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CASE NO. 2:05cv622-D** |
| ) | |
| **SMITH & NEPHEW, INC.,** )<br>**et al.,** )<br>)<br>) | |
| **Defendants.** ) | |

## SMITH & NEPHEW'S OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

Defendant Smith & Nephew, Inc. ("Smith & Nephew"), submits the following opposition to the Motion to Remand filed by Plaintiffs, Mary and Jerry Bloodsworth (the "Bloodsworths").[1]

### PRELIMINARY STATEMENT

Recognizing the general and conclusory nature of the allegations contained in the Complaint, the Bloodsworths' principal argument in their motion to remand is that they can cure those obvious deficiencies later by amendment. That argument, however, is absolutely contrary to the law of this circuit and has been flatly rejected by other courts. The Bloodsworths also argue that they have colorable claims against a non-diverse defendant, Donnie Lanier ("Lanier"), who is a sales representative. The only hint of the nature of those claims is provided not by the Complaint, the operative pleading for

---

[1] Smith & Nephew also adopts and incorporates here all of the arguments and authorities in support of federal jurisdiction described in Smith & Nephew's Notice of Removal.

purposes of determining fraudulent joinder, but by affidavits submitted by the Bloodsworths in support of their motion to remand.[2]  The Bloodsworths' affidavits, however, do not change the result in this case:  A number of courts have determined as a matter of Alabama substantive law that there is no possibility of AEMLD, breach of warranty, negligent sale, or (in the face of the kind of general allegations that are contained in the Bloodsworth's original complaint) fraud claims against a sales representative like Lanier.  The Bloodsworths further argue that discovery might later reveal they have colorable claims against another non-diverse defendant, Spar Medical, Inc. ("Spar").  They do not dispute, however, that Spar was not even involved in the sale of the hip prosthesis, liner, and ring that are the subjects of this case.  For all of these reasons, this Court should find that Lanier and Spar were fraudulently joined and deny the motion to remand.

## ARGUMENT

**I.   The Operative Pleading For Purposes of Removal Was The Original Complaint; That Pleading Clearly Shows That The Non-Diverse Parties Were Fraudulently Joined.**

The Eleventh Circuit has held that, when considering whether non-diverse defendants are fraudulently joined, the Court must consider only the original complaint as the operative pleading, because the question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings ***at the time of removal***.  *Tillman v. R J Reynolds Tobacco*, 253 F.3d 1302, 1306 n.1 (11th Cir. 2001) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939)); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983)

---

[2] As is discussed below, assuming a properly plead complaint, affidavits can and should be considered by the Court when determining fraudulent joinder.  *See* section III, *infra*.  The Court should nevertheless disregard the Bloodsworths' affidavits, because they consist of nothing but inadmissible hearsay.  Smith & Nephew has moved to strike the Bloodsworths' affidavits on that ground.

2

(citations omitted), *sups'd in part by statute on other grounds as stated in*, *Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). The Bloodsworths argue that deficiencies in their Complaint can be cured later by amendment. If that argument were correct, no case could ever be removed. As other courts have observed, it would always be theoretically possible for a plaintiff at some later time to state a colorable claim against a non-diverse individual. *See In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272, 284 (S.D.N.Y. 2001) ("Carried to its logical conclusion, the argument implies that a plaintiff could join any defendant without setting forth any basis in fact or law for liability — in short, that a plaintiff could defeat diversity jurisdiction by joining his grandmother as a defendant, [as] surely some set of facts might make her liable.'")

In *Rezulin*, the plaintiffs sued non-diverse sales representatives of a pharmaceutical manufacturer, alleging that "on or after March, 1997, in the State of Mississippi, and particularly in LeFlore County, Mississippi the individually named sales representatives represented to [plaintiffs] that the Rezulin drug was not defective or unreasonably dangerous to its users." *Id.* at 283. The defendant pharmaceutical manufacturer removed the case to federal court, asserting that the sales representatives had been fraudulently joined. *Id.* at 279. The defendant argued, among other things, that the allegations of the complaint in that case fell far short of the requirements of Rule 9(b). In support of a motion to remand, the plaintiffs argued that the deficiencies in their complaint might be cured by amendment and that this possibility required remand. The court rejected that argument, noting that "pleadings are not inconsequential documents" and that fraudulent joinder must be determined based on the pleadings:

> Federal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not

>contained in the original complaint. Indeed, it would be difficult to justify any different approach in resolving claims of improper joinder in the removal context, as another approach could close the doors to federal courts solely on the basis of plaintiffs' wishful speculation.

*Id.* at 284-85 (citations omitted).

Like the plaintiffs in *Rezulin*, the Bloodsworths are trying to avoid federal jurisdiction by arguing that deficiencies in their complaint might be cured later by amendment and that this possibility requires remand. The Bloodsworths should not be permitted to close the door to this federal court solely on the basis of wishful speculation. The law of this circuit is that the operative pleading for purposes of determining fraudulent joinder is the Complaint, and, for the reasons described below, that Complaint shows that Spar and Lanier were fraudulently joined.[3]

## II.   There Is No Possibility Of A Claim Against Lanier Because He Was Merely A Sales Representative.

### A.   Lanier Is Not A "Seller" Or "Supplier" Under The AEMLD.

Just last year, the MDL judge who was assigned the responsibility for overseeing the numerous cases involving the prescription drug Baycol was faced with fraudulent joinder issues almost identical to the ones currently before this Court. *See In re Baycol Prods. Liab. Litig.*, MDL No. 1431 (D. Minn. March 26, 2004) (copy attached). Like this case, plaintiffs had joined non-diverse sales representatives of the pharmaceutical manufacturer in an attempt to defeat federal jurisdiction, asserting AEMLD, breach of

---

[3] Indeed, the Bloodsworths' tacit acknowledgement of the need to amend their complaint should be deemed an admission that their original complaint does not provide any possible basis for liability against the non-diverse defendants. *See Lyons v. American Tobacco Co.*, No. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept 30, 1997) ("[i]f plaintiffs were unable at the time they formulated the complaint to set forth any specific factual allegations against the [non-diverse] defendants upon which [their claims could be based], there can be no better admission of fraudulent joinder of these defendants")

4

warranty, negligence, and fraud/suppression claims. Citing decisions of the Alabama Supreme Court and a federal district court in Alabama, the court in *Baycol* decided that there was no possibility of stating an AEMLD claim against a sales representative. The court noted that the sales representatives in *Baycol* had no authority to compel or prevent the distribution of particular products, that they were not the ones who reap the profits from sale of the products, and that the sales representatives were not the ones who could recoup costs as a result of seller liability through future sales of the products. "In short, the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as [a sales representative] liable in their role as store managers or sales representatives." *Baycol*, MDL No. 1431, slip. op. at 5 (quoting *Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C (S.D. Ala. Sept. 3, 1996)).

The same result was reached by the MDL court overseeing the many actions involving the prescription drug Rezulin. *See Rezulin,* 133 F. Supp. 2d 272 (S.D.N.Y. 2001). As mentioned above, like the Bloodsworths, the plaintiffs in *Rezulin* attempted to defeat diversity by joining the pharmaceutical manufacturer's Alabama sales representatives. 133 F. Supp. 2d at 287. When the *Rezulin* court denied the motion to remand in that case, it held as follows:

> There is another problem with the Alabama complaint against the sales representative. The AEMLD is founded on "broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." Accordingly, the AEMLD imposes liability only on manufacturers, sellers and suppliers. The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin. Rather, he was an agent of the manufacturer and seller. As a corporate employee, he was not "the one best able" to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales

5

representative in this case.

*Id.* (citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 139 (Ala. 1976); *Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987); *King v. S.R. Smith, Inc.*, 578 So. 2d 1285, 1287 (Ala. 1991)).

Here, Lanier, like the sales representatives in *Rezulin* cited above, is not a seller or supplier of the medical devices Ms. Bloodsworth received. Accordingly, he cannot possibly be held liable under the AEMLD. *See Rezulin*, 133 F. Supp. 2d at 287. *Accord In re Diet Drugs (Phentermine, Fenfluramine, Desfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424-25 (E.D. Pa. 2002) (court determines that resident pharmaceutical representatives fraudulently joined).

    **B.    Lanier Is Not A Seller or Supplier of Smith & Nephew Products Under Alabama's UCC.**

The Bloodsworth's warranty claims as to Lanier fail for the same reason his AEMLD claim must fail — Lanier is not a supplier or seller of the Smith & Nephew products at issue in this case. The *sine qua non* of a breach of warranty claim — whether for breach of express warranty or breach of implied warranty — is that a warranty is made only by "the seller" of the goods. *See* Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller"); *see, e.g., Rutledge v. Arrow Aluminum Indus., Inc.*, 733 So. 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the allegedly defective product at issue). As in the case of an AEMLD claim, the seller of a product is, as a matter of law, the corporate entity that makes the sale — not the employee or representative of the corporation. *See Baycol,* MDL No. 1431, slip. op.

at 7. ("[a]s the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warrant[y] claims against the individual defendants would fail"); *Rezulin*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative); *see also Laboto v. Pay Less Drug Stores, Inc.*, 261 F. 2d 406, 408 (10th Cir. 1958) (drug store employee who sold defective product was fraudulently joined because he was not a "seller" and thus could not be held liable for breach of warranty); *Johnson v. Parke Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product"); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160 (S.D. Miss. 1997) (stating that courts cannot hold sales representatives liable for breach of warranty when they are "not in the business of selling products but rather are *employed* in the business of selling products") (emphasis added) (citations omitted).

  **C.**  **Lanier Cannot Possibly Be Liable For Negligently or Wantonly Selling the Products.**

  The Bloodsworths' negligence and wantonness claims against Lanier are facially invalid because Lanier did not sell the products, and the Bloodsworths cannot establish that Lanier owed the Bloodsworths a duty to disclose to them information about the products, an essential element of a negligence or wantonness claim.

    **1.**  **Lanier Did Not Sell The Products.**

  In the *Baycol* case discussed above, the plaintiffs also asserted a cause of action for negligence against non-diverse sales representatives. Denying the plaintiff's motion

7

to remand, the court specifically found that there was no possibility of the plaintiff's establishing a negligence claim. The court wrote that Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. *See Baycol*, MDL No. 1431, slip. op. at 7. (citing *Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965)). The court held that, because the sales representatives were not the sellers of the pharmaceutical at issue in that case, there could be no cause of action against them for negligent manufacture or sale. *Id.* ("[a]s the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs *negligence* and warrant[y] claims against the individual defendants would fail") (emphasis added).

This case is no different. As described in Lanier's unrebutted affidavit, Lanier did not sell the hip prosthesis, liner, and ring at issue in the Bloodsworths' complaint; Smith & Nephew did. Because Lanier was not the seller of the medical devices at issue in this case, there can be no cause of action against him for negligent manufacture or sale.

### 2. Lanier Owed No Duty To The Bloodsworths.

To recover in a negligence or wantonness action, a plaintiff must establish the following elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach." *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185, 1190 (Ala. 1992) (quoting *Hall v. Thomas*, 564 So. 2d 936, 937 (Ala. 1990)). In this case, the Bloodsworths cannot establish that Lanier owed a legal duty to the Bloodsworths, an essential element of a negligence or wantonness claim.

Alabama is one of many states that have adopted the learned intermediary doctrine. *See, e.g., Morguson v. Baxter Healthcare Corporation*, 857 So. 2d 796 (Ala.

8

2003) (applying the learned intermediary doctrine to the sale of a medical device). In Alabama, a medical device manufacturer such as Smith & Nephew has a duty to warn only the physicians who are implanting Smith & Nephew devices in patients. A manufacturer is not required to warn the patients. *Id.* The doctrine exists because the physicians are the only ones with personal knowledge of each individual patient's needs and the ability to safely use the device in question.

Moreover, the learned intermediary doctrine imposes a duty *on the manufacturer* of the device to warn the physicians. *See Catlett v. Wyeth, Inc.*, No. 5:04-CV-154-2, 2004 U.S. Dist. LEXIS 26498, at *22 (M.D. Ga. September 14, 2004); *Johnson v. Parke-Davis,* 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000); *In re Diet Drugs*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002). Although the manufacturers employ sales representatives who can be one source of that information, the manufacturers are the ones who are ultimately responsible for the content of the information and thus liable for any alleged failure to provide information to physicians related to a medical device. *Id.*

Each of the cases cited above involved the sale of products that, like the medical devices at issue in this case, are subject to the learned intermediary doctrine. In each case, the plaintiffs asserted, among other claims, negligence against non-diverse sales representatives. In each case, the court denied the plaintiff's motion to remand, finding as an alternative basis for its holding that the learned intermediary doctrine precluded the possibility of a negligence claim. *Catlett v. Wyeth, Inc.*, 2004 U.S. Dist. LEXIS 26498, Civ. Action No. 5:04-CV-154-2 (M.D. Ga. September 14, 2004) ("There is no basis for a claim against a sales representative under the learned intermediary doctrine that imposes a duty on the *manufacturer* of the drug to warn the physicians") (emphasis supplied);

9

*Johnson v. Parke-Davis,* 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) (citing the learned intermediary doctrine, the court wrote that "Plaintiffs have cited no authority for the proposition that the sales representatives, as opposed to the manufacturer, had any duty to warn."); *In re Diet Drugs*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) ("Even overlooking [the pleading] deficiencies, ... [w]e are persuaded by the analysis and conclusion in both *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000), and *Rezulin*. Both of these cases extended the learned intermediary doctrine to sales representatives.")

This Court should reach the same conclusion. The learned intermediary doctrine precludes the Bloodsworths' negligence claim in this case.

**D.     Lanier Cannot Possibly Be Liable For Fraud.**

The Bloodsworths' fraud claim against Lanier fails for several reasons. The Bloodsworths failed to plead fraud in accordance with the requirements of Rule 9(b), they failed to allege knowledge on the part of Lanier (or, for that matter, Spar) sufficient to establish a claim of fraud, and, for reasons discussed above, they cannot establish that Lanier owed them a duty to disclose information about the medical devices at issue in this case.

**1.     The Bloodsworths Complaint Does Not Even Meet Basic Pleading Standards — Let Alone The Heightened Standard For Pleading Fraud.**

It is well-settled that a plaintiff cannot defeat diversity jurisdiction simply by alleging vague fraud claims against an in-state defendant. *See, e.g., Tillman v. R.J. Reynolds Tobacco*, 253 F. 3d 1302, 1305 (11th Cir. 2001); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (non-diverse

10

distributor defendants fraudulently joined because "the complaint simply does not specify what affirmative misrepresentation any defendant — let alone any distributor defendant — is alleged to have made:); *Calloway v. Baker Furniture Co.*, No. CV 94-PT-2751-S, 1995 WL 912708, at *1 (N.D. Ala. 1995) (finding resident subsidiaries of corporate co-defendant fraudulently joined because "[c]onclusory allegations are insufficient").

The Bloodsworths attached to their motion to remand a copy of an opinion from the United States District Court for the Northern District of Alabama which states, in part, that when determining fraudulent joinder, Rule 9(b) of the Alabama or Federal Rules of Civil Procedure is "irrelevant." For the reasons described earlier in this brief, that statement is absolutely contrary to the law of this circuit. It is also contrary to previous opinions of this Court. *See Mays v. United Ins. Co. of America*, 853 F. Supp. 1386, 1389 n.2 (M.D. Ala. 1994). In *Mays*, this Court wrote as follows:

> Even though the Alabama rules of Civil Procedure are not binding on this court, the fraudulent joinder test requires the federal courts to determine whether there is a possibility that a *state court would find that a complaint states a case of action against a resident defendant.* See Coker, 709 F. 2d at 1440 (emphasis added). Because this test requires the court to view pleadings from the viewpoint of a state court, the court, as a matter of obiter dictum, will consider Alabama's Rule 9(b) along with Federal Rule 9(b).

*Id.* This Court clearly is of the view (and rightly so) that Rule 9(b) applies in the context of analyzing fraudulent joinder.

This Court is not alone. Another judge in the United States District Court for the Northern District of Alabama held that a non-diverse defendant was fraudulently joined because the fraud claim in the complaint failed to comply with Rule 9(b). *See Devise v. Kenmore*, No. 03-J-943-S, slip op. at 6 (N.D. Ala. May 12, 2003). Other courts have also applied Rule 9(b) as part of the fraudulent joinder analysis. *See Rezulin,* 133 F.Supp.2d

11

272 (S.D.N.Y. 2001); *Baycol*, MDL No. 1431 (D. Minn. March 26, 2004); *In re Diet Drugs*, 220 F. Supp. 2d 414 (E.D. Pa. 2002).

> Alabama law requires that a claim for fraud be plead with particularity:
>
> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusory statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case. *Caron v. Teagle*, 345 So.2d 1331 (Ala. 1977)

*Lyde v. United Ins. Co. of America*, 628 So.2d 665, 670 (Ala. Civ. App. 1993). As to the non-diverse defendants in this case, the Bloodsworths have failed to plead, with the requisite particularity, the "place, the time, the contents of the false misrepresentations, the fact misrepresented, and the identification of what has been obtained." The Bloodsworth's allegations are general and conclusory. The Complaint gives neither this Court nor the defendants any indication of the nature of that defect or the "indications for, and the risks and benefits of, the product[s]" the defendants allegedly failed to disclose. The Complaint does not describe how the defendants "failed to adequately advise consumers" about the product and, if misrepresentations about the product were made, the Complaint gives no specific description of what they were, who made them, when they were made, and to whom they were made.

The Bloodsworths have submitted affidavits that purport to describe the basis for possible claims against Lanier. Taken in the best possible light for the Bloodsworths, they suggest that, in June 2003, Lanier might not have discussed with the Bloodsworths'

surgeon whether certain "pieces" that the Bloodsworths' surgeon allegedly thought he might someday need were or were not then in production.[4] The affidavits do not describe the "pieces" that are allegedly at issue, an important fact that Lanier would need to know in order to defend himself. The affidavits also do not appear to relate at all to any alleged defect in the hip prosthesis, liner, and ring described in the Complaint. Indeed, after reading the Complaint, it is inconceivable that one would conclude that the Bloodsworths are making a claim against Lanier for failing to inform a surgeon that a medical device of some kind was or was not in production. For the reasons already discussed in the beginning of this brief, this Court should disregard allegations such as these, which are not contained in the original complaint. *Rezulin*, 133 F. Supp. 2d at 284-85.

### 2. The Bloodsworths Do Not Allege Knowledge.

The Bloodsworths' fraud claim is invalid for another reason: The Bloodsworths do not allege — either in their original complaint or in their newly filed affidavits — that Lanier had *knowledge* of any specific fact about the hip prosthesis, liner, or ring that they contend he should have disclosed. That alone is fatal to their fraud and suppression claims. *See Devise v. Kenmore*, No. 03-J-943-S, slip op. at 6 (N.D. Ala. May 12, 2003) (retail salesperson fraudulently joined absent allegation of basis for knowledge of alleged product defect); *see also Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C, slip. op. at 8 n.7 (S.D. Ala. Sept. 3, 1996) ("a party seeking to recover on a wantonness theory must also show that the defendant's omission of a duty was done with knowledge and

---

[4] The Bloodsworths do not allege that Lanier made any representations to either of them. This is yet another reason why the Court should conclude that the Bloodsworths have no possible claim of fraudulent misrepresentation, whether innocent or otherwise, against Lanier. *See Levett v. Indep. Life & Accident Ins. Co.*, 814 F. Supp. 1053, 1056 (M.D. Ala. 1993) ("The law considers it fundamental that the representee who has relied on the defendant's alleged misrepresentation and the plaintiff who was injured must be one in the same.") (quoting *Hutchins v. State Farm Mut. Auto Ins. Co.*, 436 So. 2d 819 (Ala. 1983)).

13

consciousness of the likelihood of injury which would result from such an omission").

### 3. The Bloodsworths Cannot Establish That Lanier Owed Them A Duty To Disclose.

For the reasons already described in section II.C.2 above, even if the Bloodsworths had properly alleged knowledge, the Bloodsworths cannot establish another essential element of a fraud or suppression claim. They cannot establish that a sales representative like Lanier had a duty to disclose information about a medical device to them or their physician. Such a duty would not arise because of the learned intermediary doctrine. *See Catlett v. Wyeth, Inc.*, No. 5:04-CV-154-2, 2004 U.S. Dist. LEXIS 26498, at * 22 (M.D. Ga. September 14, 2004); *Johnson v. Parke-Davis,* 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000); *In re Diet Drugs*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002).

In summary, the Bloodsworths cannot establish a single valid cause of action against Lanier in his role as a sales representative. Lanier is not a seller or supplier of medical devices under the AEMLD or Alabama's UCC or for purposes of a negligent manufacture or sale claim. The Bloodsworths' fraud or suppression claim fails to comply with basic pleading requirements. The claim is hopelessly vague, and the Bloodsworths do not allege knowledge on the part of Lanier. Moreover, even if all of these problems could be cured, the Bloodsworths still could not establish the existence of a legal duty on Lanier's part sufficient to ground claims such as negligence or fraud in the sale of the medical devices at issue in this case.

**III.   There Is No Possibility Of A Claim Against Spar Because Spar Was Not Involved In The Sale Of The Products.**

As a preliminary matter, Spar has not been properly served in this action.  The Court should therefore not consider Spar's citizenship when determining whether removal was proper.  (*See* Motion by Spar Medical, Inc., to Deem Service of State Court Process Insufficient, filed on August 12, 2005); 28 U.S.C. § 1441(b).

Leaving aside whether Spar has been properly served, the Court is nevertheless permitted to look behind the pleadings to some extent to determine whether, based on the properly plead allegations of the Complaint, there is a possibility of a colorable claim against Spar.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 98 (1921); *Pacheco De Perez v. AT&T Co.*, 139 F. 3d 1368, 1380 (11th Cir. 1998) (court may consider affidavits and deposition testimony submitted by parties); *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983); *In re Diet Drugs*, 220 F.Supp.2d 414, 419-20 (E.D. Pa 2002) (although in determining fraudulent joinder contested issues of substantive fact must be resolved in favor of plaintiff, that does not "mean [the court] must blindly accept whatever plaintiffs may say no matter how incredible or how contrary to the overwhelming weight of the evidence"); *see, e.g., Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (denying motion to remand because of uncontroverted evidence that the non-diverse defendant was not liable; "the evidence in the record reflects that the [salesmen] were not present when the home insurance policy was sold to Plaintiff"); *Mask v. Chrysler Corp.*, 825 F. Supp. 285, 288 (N.D. Ala 1993) (fraudulent joinder may be proven by showing "that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false" (citations omitted)).  These cases stand for the proposition that, if the undisputed facts at

15

the time of removal make clear that for whatever reason there is no possibility that the complaint states a claim against a non-diverse defendant — whether it is because of a lapsed statute of limitations, the sealed container defense, or simply no causal connection to the events at issue in a lawsuit — the Court should find fraudulent joinder. *Id.*

That is precisely the situation in this case as to Spar. In support of the notice of removal, Smith & Nephew submitted an affidavit from Lanier. That affidavit states that Lanier, a sales representative, and not Spar, delivered the medical devices at issue in this case.[5] The Bloodsworths did not dispute Lanier's affidavit. Consequently, this Court should conclude that the joinder of Spar lacked any reasonable basis in fact. *See Rezulin*, 133 F. Supp. 2d at 281; *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996).[6]

## CONCLUSION

For all of the foregoing reasons, this Court should deny the motion to remand. There is not one valid cause of action in the Complaint against the non-diverse defendants, and their presence in the case should be ignored.

    s/ James C. Barton, Jr.
    James C. Barton, Jr.
    Bar Number: ASB-0237-B51J
    Email: jbartonjr@jbpp.com

---

[5] Indeed, Lanier's affidavit makes clear that the claims against him in this case lack any reasonable basis whatsoever. As to the products at issue in this case, Lanier was not much more than a delivery man for Smith & Nephew. The Bloodsworths have not cited a single case that would support the possibility of a legal claim against such a person for defects in the products he delivered.

[6] Of course, all the previous arguments concerning the inadequacies of the fraud allegations in the Complaint as to Lanier would also apply with equal force to Spar.

                                                s/ James P. Pewitt
                                                James P. Pewitt
                                                Bar Number: ASB-7642-P62J
                                                Email: jpewitt@jbpp.com

                                                s/ Alan D. Mathis
                                                Alan D. Mathis
                                                Bar Number: ASB-8922-A59M
                                                Email: adm@jbpp.com

                                                Attorneys for Defendant
                                                Smith & Nephew, Inc.


**JOHNSTON BARTON PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone:   (205) 458-9400
Facsimile:   (205) 458-9500

    **OF COUNSEL**

17

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the above and foregoing with the Clerk of the Court on August 15, 2005, using the CM/ECF system, which will send notification of such filing to the following:

Tom Dutton, Esq.
PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North, Suite 1100
Birmingham, Alabama 35203
(205) 322-8880


                                          s/ Alan D. Mathis
                                          Of Counsel

W0521075.DOC