IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY BLOODSWORTH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:05cv622-D |
| | ) (WO) |
| SMITH & NEPHEW, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the court is Plaintiffs Mary and Jerry Bloodsworth's motion to remand in which Plaintiffs assert that subject matter jurisdiction is lacking in this cause which was removed from the Circuit Court of Montgomery County, Alabama.[1] (Doc. No. 9.) For the reasons to follow, the court finds that Plaintiffs' motion is due to be denied.

Previously, the court entered a memorandum opinion and order ("Order") in the above-styled cause, finding that one of the two resident Defendants had been fraudulently joined in this products liability lawsuit. (Doc. No. 22.) On the basis of fraudulent joinder, the court also dismissed all but the fraud claims against the second resident Defendant, Donnie Lanier ("Lanier"). In that Order, as to the fraud claims, the court granted Plaintiffs' request to conduct limited jurisdictional discovery on the issue of fraudulent joinder and, at the same time, directed Plaintiffs to file a pleading alleging Mrs. Bloodsworth's fraud claims with particularity. Pursuant to the court's Order, the parties have deposed Lanier and Mrs.

---

[1] The court refers to Plaintiffs individually as "Mrs. Bloodsworth" and "Mr. Bloodsworth" and collectively as "Plaintiffs."

Bloodsworth's surgeon, Dr. Donald Hodurski ("Dr. Hodurski"), and the deposition transcripts have been filed with the court. The parties also have submitted supplemental briefs on the issue of fraudulent joinder. (See Doc. Nos. 28, 31.)

The issue is whether the removing defendant, Smith & Nephew, Inc., has met its heavy burden of demonstrating that no possibility exists under Alabama law that Mrs. Bloodsworth can state a cause of action against its sales representative, Lanier, for either fraudulent suppression or fraudulent misrepresentation. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). A fraudulent suppression claim under Alabama law requires a plaintiff to demonstrate

> "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result."

Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1161 (Ala. 2003) (quoting State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 323-24 (Ala. 1999)). A claim of fraudulent misrepresentation comprises the following elements: "'(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result.'" Fisher v. Comer Plantation, 772 So.2d 455, 463 (Ala. 2000) (quoting Baker v. Bennett, 603 So.2d 928, 935 (Ala. 1992)).

The facts and standard of review are set out in the court's prior Order and need only be repeated here as is necessary to an understanding of the issues now raised. In June 2003, Dr. Hodurski performed a total left hip replacement on Mrs. Bloodsworth. During this surgery, Dr. Hodurski implanted a prosthetic hip replacement system manufactured by Smith & Nephew.

Lanier, a sales representative for Smith & Nephew, sold and delivered the hip replacement system to Dr. Hodurski.[2]

One of the components of the hip replacement system is an acetabular cup which encases a femoral ball component, together which simulate the ball and socket mechanism of the hip joint. The acetabular cup is manufactured in a variety of sizes, but the exact size needed for a patient only can be determined during surgery by the physician upon examination of the hip joint. For this reason, Dr. Hodurski required Lanier to have available in the operating room the entire range of sizes of acetabular cups. During surgery, Dr. Hodurski fitted Mrs. Bloodsworth with a 52-millimeter acetabular cup.

Thereafter, Mrs. Bloodsworth began experiencing hip dislocation problems. Dr. Hodurski decided to perform another surgery to reinforce Mrs. Bloodsworth's hip prosthesis to prevent further dislocations. One of the options available and the option which Dr. Hodurski chose involved implanting a constrained liner which fits into the acetabular cup and further secures the femoral ball to prevent its dislocation. The size of the constrained liner corresponds to the size of the acetabular cup; thus, Dr. Hodurski needed a 52-millimeter constrained liner in order to perform the surgery. The 52-millimeter constrained liner,

---

[2] The court notes that Mrs. Bloodsworth was not the direct recipient of Lanier's alleged misrepresentations and/or omissions; rather, Dr. Hodurski was. As discussed in its prior Order, the fact that she was not the "hearer" is not fatal to her fraud claims against Lanier because an argument can be made that, by promoting Smith & Nephew's products to Dr. Hodurski, Lanier intended to reach and influence Dr. Hodurski's patients. See, e.g., Wheelan v. Sessions, 50 F. Supp.2d 1168, 1174 (M.D. Ala. 1999) (DeMent, J.) ("'[t]here is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation'") (quoting Colonial Bank of Ala. v. Ridley & Schweigert, 551 So.2d 390, 396 (Ala. 1989)).

however, was not immediately available from Smith & Nephew, necessitating that Dr. Hodurski postpone the surgery until this particular size could be produced and delivered. Mrs. Bloodsworth's surgery, thus, was delayed approximately three to four weeks.

The essence of Mrs. Bloodsworth's fraud claims against Lanier is that Lanier had a duty to inform Dr. Hodurski that constrained liners for "petite size" hip replacement systems, which include the 52-millimeter one, would not be immediately available if Mrs. Bloodsworth required additional surgery. (Doc. No. 28 at 5.) Plaintiffs contend that Lanier's representations and/or omissions affected Dr. Hodurski's selection of the hip replacement system he initially implanted in Mrs. Bloodsworth and that Mrs. Bloodsworth was damaged as a result thereof because she "was forced to wait until Smith & Nephew produced" a constrained liner in a size which would fit her acetabular cup. (Id. at 6.) In other words, Plaintiffs contend that, if Dr. Hodurski had known that Smith & Nephew would have to specially make the 52-millimeter constrained liner, resulting in a delay of its delivery to Dr. Hodurski, he would not have chosen the Smith & Nephew hip replacement system for Mrs. Bloodsworth.

Construing the facts and controlling law in the light most favorable to Plaintiffs, see Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989), the court finds that Dr. Hodurski's testimony constitutes evidence which undisputedly refutes the unsubstantiated arguments made by Plaintiffs in their brief. The evidence establishes, without contradiction or doubt, that information regarding the delayed availability of the 52-millimeter constrained liner would not have been material to Dr. Hodurski's decision as to which hip replacement products to implant in Mrs. Bloodsworth and, in fact, would not have been "an issue at all" to him.

(Hodurksi Dep. at 21.) Dr. Hodurski testified in unambiguous terms that, even if he had known prior to Mrs. Bloodsworth's June 2003 surgery that the 52-millimeter constrained liner would not be immediately available if he later needed it, that information would not have affected in any way his selection of the Smith & Nephew hip replacement system for Mrs. Bloodsworth. (See id. at 20-23.) Dr. Hodurski further testified that the postponement of the surgery did not cause Mrs. Bloodsworth any physical harm. (See id. at 20.)

Smith & Nephew has submitted uncontradicted evidence that the alleged misrepresented and/or omitted fact of which Mrs. Bloodsworth complains did not constitute a *material* fact and did not induce or otherwise cause Dr. Hodurski to choose the Smith & Nephew hip replacement system for Mrs. Bloodsworth over another manufacturer's product. Based upon a careful review of the evidence, the court finds that Smith & Nephew has met its heavy burden of demonstrating with clear and convincing evidence that Mrs. Bloodsworth has no possibility of stating the essential elements of her fraudulent suppression and fraudulent misrepresentation claims against Lanier. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989) (holding that removing defendant's burden is heavy and requires proof by clear and convincing evidence); see also Waddell, 875 So.2d at 1161; Fisher, 772 So.2d at 463.

Because no possibility exists that Mrs. Bloodsworth can prevail on her claims for fraud against Lanier, the court finds that the joinder of Lanier is fraudulent and that he is due to be

dismissed as a defendant on that ground.[3]  See Cleavland v. Fidelity & Guar. Life Ins. Co., No. 2:05cv655, 2005 WL 3115282, at *3-*4 (M.D. Ala. Nov. 16, 2005).  The court, therefore, disregards Lanier's citizenship in assessing whether complete diversity exists.  See Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979).

It is undisputed that Plaintiffs and the sole remaining Defendant (Smith & Nephew) are of diverse citizenship and that the amount-in-controversy satisfies the jurisdictional requirement of 28 U.S.C. § 1332(a)(1).  The court, thus, finds that it properly exercises diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(b).

Accordingly, it is CONSIDERED and ORDERED that Plaintiffs' motion to remand (Doc. No. 9) be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that all claims against Defendant Donnie Lanier be and the same are hereby DISMISSED with PREJUDICE and that Lanier be and he is hereby DISMISSED as a Defendant in this lawsuit.

DONE this 17th day of February, 2006.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The court notes that, as discussed in its prior Order, Mr. Bloodsworth claims loss of his wife's consortium.  Mr. Bloodsworth's loss of consortium claim against Lanier has no possibility of surviving because his claim is derivative of Mrs. Bloodsworth's causes of action.  See, e.g., Fenley v. Rouselle Corp., 531 So.2d 304, 304 n.1 (Ala. 1998) (wife's loss of consortium claim was derivative of her husband's AEMLD claim); cf. Nichols v. Wal-Mart Stores, Inc., No. 95-1252-CIV-T-23E, 1997 WL 33147702, *6 (M.D. Fla. March 26, 1997) (under Florida law, "a claim for loss of consortium may only be maintained where the spouse alleging injury is entitled to recover on a separate independent claim").