UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY BLOODSWORTH and<br>JERRY BLOODSWORTH,<br><br>    Plaintiffs,<br><br>v.<br><br>SMITH & NEPHEW, INC.,<br>et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No.: 2:05-cv-622-D<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT SMITH & NEPHEW, INC.'S
MOTION TO STRIKE PLAINTIFFS' EXPERT DISCLOSURE
AND EXCLUDE OPINION TESTIMONY
OF PLAINTIFFS' EXPERT, DONALD F. HODURSKI, M.D.**

COMES NOW, defendant Smith & Nephew, Inc. ("Smith & Nephew"), pursuant to Fed. R. Civ. P. 26(a)(2), Fed. R. Evid. 104(a) and Fed. R. Evid. 702, and moves this Court to enter an order striking plaintiffs' expert disclosure and/or excluding the opinion testimony of plaintiffs' expert witness, Donald F. Hodurski, M.D. As grounds therefor, Smith & Nephew states as follows:

**I.   Background**

1. On June 20, 2005, plaintiffs commenced this action, claiming that certain Smith & Nephew products implanted in Mary Bloodsworth as part of a total hip replacement were defective and caused her injury. More specifically, plaintiffs claim that they were "injured and damaged" because Smith & Nephew's "hip prosthesis, including the retaining lining and ring," which is better known as a "constrained liner," was in a defective condition when it was implanted in Mrs. Bloodsworth. (Complaint ¶ 1).

2. The prosthetic hip replacement system implanted in Mrs. Bloodsworth consists of a cup with a polyethylene liner that is implanted in the patient's acetabulum (the "acetabular cup"), and a femoral stem (the "femoral stem") with a synthetic ball on the head of the stem that is implanted into the patient's femur. (Hodurski Depo., p. 8).[1] The synthetic ball on the head of the femoral stem rests within the polyethylene liner of the acetabular cup, simulating the ball and socket mechanism of the hip joint. (Hodurski Depo., pp. 7-9). If the patient suffers hip dislocations, as was the case with Mrs. Bloodsworth subsequent to a fall in the shower, the surgeon may choose to perform a second surgery to revise the prosthesis in hopes of decreasing the chances of further dislocations. (Hodurski Depo., p 13). Implanting a constrained liner is one of several options. (Hodurski Depo., pp. 16-18). The constrained liner (a polyethylene liner with a locking ring) fits in the acetabular cup of the hip replacement system, its purpose being to provide additional stability and thereby decrease the chances that the ball on the head of the femoral stem will come out of the polyethylene liner of the acetabular cup resulting in dislocation. (Hodurski Depo., pp. 14-16); (Lanier Depo., p. 15).[2]

3. Because the product at issue in this case is "of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of . . . plaintiff's case." *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1276 (M.D. Ala. 1999) (holding that design and manufacture of kerosene heater was complex and technical matter such that expert testimony was necessary) (citing *Townsend v. General Motors Corp.*, 642 So. 2d 411, 415 (Ala. 1994), and *Brooks v. Colonial Chevrolet-Buick*, 579 So. 2d 1328, 1333 (Ala. 1991)); *see also Sears, Roebuck & Co. v.*

---

[1] A transcript of Dr. Hodurski's deposition is included in the record as Document # 31-2.
[2] A transcript of Donnie Lanier's deposition is included in the record as Document # 31-3.

*Haven Hills Farm, Inc.*, 395 So. 2d 991, 995 (Ala. 1981) (stating that expert testimony is ordinarily required to prove product defect because of complex and technical nature of commodity).

4. On March 2, 2006, this Court entered a Scheduling Order requiring plaintiffs to make their Rule 26(a)(2) expert disclosures by September 11, 2006.

5. Two days after the ordered deadline, on September 13, 2006, plaintiffs identified Donald F. Hodurksi, M.D., as their only expert witness. (*See* Plaintiffs' Rule 26(a)(2) Information, attached hereto as Exhibit "A"). Dr. Hodurski performed the implantation of Mrs. Bloodsworth's original hip replacement system and the revision surgery during which the constrained liner was implanted. He did not perform Mrs. Bloodsworth's explantation surgery, however, and, therefore, he never saw the subject product after its alleged failure.

6. Plaintiffs disclosed that the substance of Dr. Hodurski's expected opinion testimony would mirror the testimony he provided at deposition on February 6, 2006. Plaintiffs' stated grounds for Dr. Hodurski's expected testimony are his "education, experience and his course of treatment of the plaintiff, Mary Bloodsworth." Plaintiffs provided no other information in their Rule 26(a)(2) disclosure.

**II.     Argument**

    **A.     Plaintiff's Expert Disclosure is Untimely.**

7. Plaintiffs have failed to comply with this Court's Scheduling Order by making their expert disclosure after September 11, 2006. On that basis alone, the Court may strike plaintiffs' expert disclosure. *See* Fed. R. Civ. P. 16(f) ("If a party . . . fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders

3

with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

### B. Plaintiffs' Expert Disclosure Does Not Comply with Rule 26(a)(2).

8. Plaintiffs' expert disclosure is woefully deficient under Rule 26(a)(2). In the Scheduling Order entered on March 2, 2006, the Court stated, "The parties shall comply fully with all requirements of Rule 26(a)(2) in regard to disclosure of expert testimony." (*See* Doc. # 36, p. 2). Yet, plaintiffs have not complied fully with even one of the requirements of Rule 26(a)(2)(B), which states:

> Except as otherwise stipulated or directed by the court, this disclosure shall . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publication authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

9. Plaintiffs have not provided a written report prepared and signed by Dr. Hodurski. Plaintiffs have not provided a complete statement of all opinions to be expressed by Dr. Hodurski and the basis and reasons therefor. Plaintiffs have not provided the data or other information considered by Dr. Hodurski in forming his opinions. Plaintiffs have not provided any exhibits to be used by Dr. Hodurski. Plaintiffs have not provided the complete qualifications of Dr. Hodurski, his compensation for his testimony, or a listing of other cases in which he has appeared as an expert witness. Instead of providing this *required* information, plaintiffs have referred only to Dr.

4

Hodurski's February 6, 2006 deposition, which was taken for the sole purpose of establishing whether there was any basis for plaintiffs' allegations of fraud against Donnie Lanier – a Smith & Nephew orthopedic device representative through whom Dr. Hodurski ordered the subject product. After reviewing the transcript of Dr. Hodurski's deposition, the Court found "that Dr. Hodurski's testimony constitutes evidence which undisputedly refutes the unsubstantiated arguments made by the Plaintiffs" against Donnie Lanier. Accordingly, the Court dismissed plaintiffs' claims against Donnie Lanier and denied plaintiffs' Motion to Remand. (*See* Doc. # 32).

10.   Dr. Hodurski was deposed not as an expert, not as one of Mrs. Bloodsworth's treating physicians, but rather as the person who would have been the recipient of any fraudulent misrepresentations or omissions by Donnie Lanier. The questions posed to Dr. Hodurski about the subject product were superficial questions asked by plaintiffs' counsel at the end of the deposition and were tangential at best to the purpose of the deposition. Dr. Hodurski's testimony about the product lacks substance and is not a legitimate replacement for a proper Rule 26(a)(2) disclosure. Accordingly, plaintiffs' expert disclosure is due to be stricken.

### C.   **Dr. Hodurski's Opinion Testimony is Not Based On Reliable Methodology and Would Not Be Helpful to the Jury.**

11.   Even ignoring the deficiencies of plaintiffs' expert disclosure, Dr. Hodurski's opinion testimony would be due to be excluded under Fed. R. Evid. 104(a) and Fed. R. Evid. 702.

12.     For the "particulars" of Dr. Hodurski's expected opinion testimony, plaintiffs refer to his February 6, 2006 deposition, at which he testified about the subject product as follows:[3]

> Q. Prior to Mrs. Bloodsworth's revision, had you used constrained liners before?
>
> A. Yes.
>
> Q. Had you used a Smith & Nephew?
>
> A. One.
>
> …
>
> Q. And at the time of Mrs. Bloodsworth's surgery, had your experience with those been positive?
>
> A. Yes.

(Hodurski Depo., p. 21, lines 8-13, 16-19).

> Q. Okay. Do you use Smith & Nephew, these products, anymore?
>
> A. Yes.
>
> Q. The hips you do?
>
> A. Yes.
>
> Q. Has your experience with other than Mrs. Bloodsworth's hip been good with reference to these hips?
>
> …
>
> A. The hips, yes. The constrained liner, no. In other words, the primary one that I stick in there does well. The constrained liner, no.
>
> Q. And you don't use those constrained liners any longer?

---

[3] The portion of Dr. Hodurski's deposition testimony included herein is *all* of his testimony relating to the design and performance of the product at issue. A complete transcript of Dr. Hodurski's deposition is included in the record as Exhibit "A" to Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand (Doc. # 31-2).

6

> A. No.
>
> Q. And when you have used those constrained liners, they have failed?
>
> A. Yes.
>
> Q. And when you have used those constrained liners, did you use them as they were intended to be used?
>
> A. Yes.
>
> Q. And I'm not trying to make an engineer out of you, but in your opinion are those constrained liners defective in one way or another?
>
> …
>
> A. I don't – my track record in my group's been miserable, and I don't, I don't think it's a good appliance. I think their primary is good. I think that particular revision thing, which is hopefully once every ten or twelve years, is not good.
>
> Q. And, so, as far as you would be concerned, would you think them to be defective?
>
> …
>
> A. And the reason I'm hesitating is I don't know the word – I'm not trying to play a word game or anything. Would I want it in me? No. Would I put it in you? No. I think the design is incorrect. *Whether the product is defective, I don't know that*. I think the design is not correct, if that –
>
> Q. That makes sense.
>
> A. You know what I mean.

(Hodurski Depo., pp. 26-29) (emphasis added).

    13.    Dr. Hodurski's purported expert opinions must be evaluated under the standards in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, which authorize the admission of expert opinion testimony only "if (1) the testimony is based

upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

14.     *Daubert* requires that the trial court act as a gatekeeper to ensure that unreliable opinions do not reach the jury. As a gatekeeper, the court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

15.     The *Daubert* Court set out four non-exclusive factors for trial courts to consider in fulfilling their gatekeeper role:

> (1)     whether the expert's theory, can be, and has been, tested;
>
> (2)     whether it has been subjected to peer review;
>
> (3)     the known or expected rate of error; and
>
> (4)     whether the methodology has been generally accepted by the relevant scientific community as reliable for the purpose for which it is employed.

*Daubert*, 509 U.S. at 593-94. *See also Kumho Tire*, 526 U.S. at 151 (commenting on usefulness of *Daubert* factors in evaluating the reliability of experience-based testimony).

16.     As the proponent of the opinion testimony of Dr. Hodurski, plaintiffs bear the burden to establish that Dr. Hodurski is qualified, that the methodology he uses to support his opinions is reliable, and that his opinions will be helpful to the trier of fact. "[T]he burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert

8

opinion." *McClain*, 401 F.3d at 1238 (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

17. Dr. Hodurski's opinion about the design of the product at issue should be excluded because the foundation for his opinion is unreliable and his opinion would not be helpful to the jury.

18. Dr. Hodurski is a clinician, not a researcher. (*See* Dr. Hodurski's Curriculum Vitae, attached hereto as part of Exhibit "A"). He has never designed or tested the product at issue and his opinions do not pass any of the four guideposts of reliability established in *Daubert*. Indeed, Dr. Hodurski's opinions are based *exclusively* on *his* very limited experience with the use of the product on his patients – he has used a Smith & Nephew constrained liner only twice. The Eleventh Circuit has stated that "[u]ncontrolled anecdotal information," like that offered by Dr. Hodurski, "offers one of the least reliable sources to justify opinions about both general and individual causation," *McClain*, 401 F.3d at 1250, and that "testimony based solely on the experience of an expert would not be admissible." *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156-57). Because Dr. Hodurski's opinion testimony is not supported by reliable methodology, it should be excluded.

19. Additionally, Dr. Hodurski never testified that the product at issue was defective, despite being asked that question by plaintiffs' counsel twice. Instead, Dr. Hodurski testified, "I think the design is incorrect . . . [w]hether the product is defective, I don't know that." The meaning of Dr. Hodurski's statement is anything but clear and could easily confuse or mislead the jury. *See, e.g., U.S. v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004) (excluding expert opinion where "imprecise and unspecific" nature of opinion "easily could serve to confuse the

9

jury, and might well have misled it."). Accordingly, Dr. Hodurski's opinion testimony would not be helpful to the jury and should therefore be excluded.

### III. Conclusion

WHEREFORE, Smith & Nephew respectfully requests that this Court enter an order striking plaintiffs' expert disclosure and/or excluding the opinion testimony of plaintiffs' expert, Donald F. Hodurski, M.D.

s/ Lee M. Pope
Lee M. Pope
Alabama Bar No: ASB-9286-P43L
Email: lmp@jbpp.com

One of the attorneys for Defendant,
Smith & Nephew, Inc.

**JOHNSTON BARTON
PROCTOR & POWELL LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue, North
Birmingham, Alabama 35203
Telephone: (205) 458-9400
Facsimile: (205) 458-9500

**OF COUNSEL**

## **CERTIFICATE OF SERVICE**

    I hereby certify that I electronically filed the above and foregoing with the Clerk of the Court on October 12, 2006, using the CM/ECF system, which will send notification of such filing to the following:

Tom Dutton, Esq.
PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North, Suite 1100
Birmingham, Alabama 35203
(205) 322-8880


                                                  s/ Lee M. Pope
                                                  Of Counsel

W0575634.DOC