IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY BLOODSWORTH, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:05cv622-ID |
| | )                 [WO] |
| SMITH & NEPHEW, INC., | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the court are two motions filed by Defendant Smith & Nephew, Inc. ("Smith & Nephew"): (1) a motion for summary judgment; and (2) a motion to strike Plaintiffs' expert disclosure and to exclude the expert opinion testimony. (Doc. Nos. 37-38.) In this products liability lawsuit, involving an alleged defective component of a prosthetic hip replacement system, Smith & Nephew has moved for summary judgment and to exclude expert opinion testimony on the ground that Plaintiffs' sole proposed expert, Donald F. Hodurski, M.D. ("Dr. Hodurski"), has not provided any "admissible expert testimony" concerning a design defect and/or causation. Plaintiffs Mary and Jerry Bloodsworth oppose the motions.[1] (See Doc. Nos. 40-41.) After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Smith & Nephew's motions are due to be granted in part and denied in part as moot.

---

[1] The court refers to Plaintiffs individually as "Mrs. Bloodsworth" and "Mr. Bloodsworth" and collectively as "Plaintiffs."

## II. JURISDICTION AND VENUE

Previously, the court denied Plaintiffs' motion to remand, finding that the non-diverse Defendants were fraudulently joined. (See Doc. Nos. 22, 32.) The remaining Defendant, which is Smith & Nephew, and Plaintiffs are of diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The court, therefore, properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of both.

## III. STANDARD OF REVIEW

Summary judgment is entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). At the summary judgment juncture, the court assumes that the evidence of the non-movant is true and draws all reasonable inferences in the light most favorable to the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court's function is not to weigh the evidence and determine the truth of the matter, but to decide whether there is a genuine issue for trial. Id. at 249-50.

On a summary judgment motion, the movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it

contends demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  For issues on which the non-movant will bear the ultimate burden at trial, the movant may satisfy its initial burden either by (1) "point[ing] out to the district court . . . that there is an absence of evidence to support the non-moving party's case" or by (2) producing "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993); see also Edwards v. Aguillard, 482 U.S. 578, 595 n.16 (1987); Celotex Corp., 477 U.S. at 325.

Once the movant has carried that burden, the burden then shifts to the party opposing the motion to "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."  Douglass v. United Serv. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996); Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990) (A "conclusory allegation" cannot defeat summary judgment.).  "[A]fter adequate time for discovery and upon motion," summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

## IV.  BACKGROUND

In June 2003, Dr. Hodurski, who is an orthopedic surgeon, performed a total left hip replacement on Mrs. Bloodsworth.  During this surgery, Dr. Hodurski implanted a prosthetic hip replacement system manufactured by Smith & Nephew.  This system consists of a polyethylene liner that is implanted in the patient's acetabulum (the "acetabular cup"), and a femoral stem with a synthetic ball on the head of the stem that is implanted into the patient's femur.  (Hodurski Dep. at 6-9 (Ex. 2 to Doc. No. 31).)  The synthetic ball on the head of the femoral stem rests within the polyethylene liner of the acetabular cup, simulating the ball and socket mechanism of the hip joint.  (Id. at 7-9.)

After this surgery, Mrs. Bloodsworth began experiencing hip dislocation problems.  Dr. Hodurski decided to perform another surgery to reinforce Mrs. Bloodsworth's hip prosthesis to prevent further dislocations.  One of the options available and the option which Dr. Hodurski chose involved implanting a constrained liner which fits into the acetabular cup.  (Id. at 12-18.)  The constrained liner (a polyethylene liner with a locking ring) fits in the acetabular cup of the hip replacement system, its purpose being to provide additional stability and thereby decrease the chances that the ball on the head of the femoral stem will come out of the polyethylene liner of the acetabular cup resulting in dislocation.  (Id. at 14-16.)  The constrained liner which Dr. Hodurski used also was a Smith & Nephew product.  (Id. at 14.)  Mrs. Bloodsworth, however, alleges that, after the constrained liner was implanted, she continued to experience complications, which necessitated additional surgeries.  (See Compl. at 3-4.)

Seeking relief for Mrs. Bloodsworth's injuries, Plaintiffs, who are husband and wife, commenced this lawsuit on May 31, 2005, by filing a complaint in the Circuit Court of Montgomery County, Alabama, against Smith & Nephew and other defendants who are no longer parties to this lawsuit. Mrs. Bloodsworth brings the following causes of action against Smith & Nephew: products liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breaches of implied warranties of merchantability and fitness; fraudulent suppression; fraudulent and/or negligent misrepresentation; and failure to warn. (Compl. ¶¶ 1-9.) Mr. Bloodsworth claims loss of his wife's consortium. (Id. ¶ 11.)

The heart of Plaintiffs' claims is that the constrained liner was in a defective condition when it was implanted in Mrs. Bloodsworth and that the defective condition of the constrained liner caused the product's failure and resulted in injury to her. Although Plaintiffs allege a variety of claims, as recited above, all of the claims are dependent upon the theory that the constrained liner failed due to a design defect.

To support the foregoing theory of their case, Plaintiffs rely on proposed expert testimony from Dr. Hodurski. In their disclosure to Smith & Nephew of their expert

testimony, as required by the court's scheduling order and Rule 26(a)(2) of the Federal Rules of Civil Procedure,[2] Plaintiffs state as follows:

> Plaintiff[s] expect[] that during the trial of this cause opinion testimony will be presented by Donald F. Hodurski, M.D. The particulars of his education and experience are stated in the attached Curriculum Vitae.
>
> The subject matter, facts and opinions of Dr. Hodurski's testimony are expected to be the same as those to which he testified during his deposition of February 6, 2006. For particulars, please refer to the deposition transcript.
>
> The grounds for Dr. Hodurski's expected opinion testimony are his education, experience and his course of treatment of the plaintiff, Mary Bloodsworth.

(See Ex. A to Doc. No. 37.)

Dr. Hodurski's deposition testimony, upon which Plaintiffs rely and which relates to the design and performance of the constrained liner at issue is as follows:

> Q. Prior to Mrs. Bloodsworth's revision, had you used constrained liners before?
> A. Yes.
> Q. Had you used a Smith & Nephew?
> A. One.
>
> . . .
>
> Q. And at the time of Mrs. Bloodsworth's surgery, had your experience with those been positive?
> A. Yes.
>
> . . .

---

[2] The court entered a scheduling order in this case on March 2, 2006. (See Doc. No. 36.) Section 7 of said order pertains to the parties' disclosure of expert witnesses. Section 7 provides, among other things, that "[t]he parties shall comply fully with all requirements of Rule 26(a)(2) [of the Federal Rules of Civil Procedure] in regard to the disclosure of expert testimony." (Id.)

Q. Okay. Do you use Smith & Nephew, these products, anymore?
A. Yes.
Q. The hips you do?
A. Yes.
Q. Has your experience with other than Mrs. Bloodsworth's hip been good with reference to these hips?

. . .

A. The hips, yes. The constrained liner, no. In other words, the primary one that I stick in there does well. The constrained liner, no.
Q. And you don't use those constrained liners any longer?
A. No.
Q. And when you have used those constrained liners, they have failed?
A. Yes.
Q. And when you have used those constrained liners, did you use them as they were intended to be used?
A. Yes.
Q. And I'm not trying to make an engineer out of you, but in your opinion are those constrained liners defective in one way or another?

. . .

A. I don't – my track record in my group's been miserable, and I don't, I don't think it's a good appliance. I think their primary is good. I think that particular revision thing, which is hopefully once every ten or twelve years, is not good.
Q. And, so, as far as you would be concerned, would you think them to be defective?

. . .

A. And the reason I'm hesitating is I don't know the word – I'm not trying to play a word game or anything. Would I want it in me? No. Would I put it in you? No. I think the design is incorrect. Whether the product is defective, I don't know that. I think the design is not correct, if that –
Q. That makes sense.
A. You know what I mean.

(Hodurski Dep. at 21, 26-29.)

## V. DISCUSSION

To establish a prima face case under the AEMLD, Plaintiffs must show, among elements, that the constrained liner was defective and that it caused Mrs. Bloodsworth's injury. See, e.g., Cooper v. Toshiba Home Tech. Corp., 76 F. Supp.2d 1269, 1276 (M.D. Ala. 1999). The defect in the product must be affirmatively shown. See Townsend v. General Motors Corp., 642 So.2d 411, 415 (Ala. 1994). "'[O]rdinarily, expert testimony is required' in AEMLD cases" to prove that the product is defective and that the defective condition of the product caused the product to fail and injure the plaintiff. Rudd v. General Motors Corp., 127 F. Supp.2d 1330, 1338 (M.D. Ala. 2001) (quoting Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981)).

Plaintiffs do not dispute that expert testimony is a necessary ingredient of their case, and the court agrees. The constrained liner at issue is "of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff."[3] Cooper, 76 F. Supp.2d at 1276.

Smith & Nephew, however, asserts that Dr. Hodurski's limited testimony does not satisfy the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579

---

[3] Alabama courts consistently have opined that, under the AEMLD, when the product at issue is of a complex and technical nature, the plaintiff's proof of a defect should be in the form of expert testimony. See, e.g., Townsend, 642 So.2d at 415 (expert testimony required to prove the existence of a defect in a vehicle's brake system); Britt v. Chrysler Corp., 699 So.2d 179, 181 (Ala. Civ. App. 1997) (air bag system).

(1993), and its progeny, and Rule 702 of the Federal Rules of Evidence. Smith & Nephew argues that the testimony does not establish a genuine issue of material fact as to defect or causation, and, thus, Plaintiffs cannot sustain their burden on summary judgment. In other words, Smith & Nephew contends that, since expert testimony is critical in establishing that the constrained liner was defective in its design and that any alleged design defect caused Mrs. Bloodsworth's injuries, and since Plaintiffs have not produced any admissible expert testimony on these issues, its motion for summary judgment should be granted.

In response to Smith & Nephew's arguments, Plaintiffs concede that, if their expert testimony is not considered by the court, then they cannot prove that the constrained liner was defective and caused injury to Mrs. Bloodsworth and, thus, cannot survive the instant motion for summary judgment or prevail on any of their claims in this lawsuit. (See Doc. No. 41 at 2.) Plaintiffs, though, contend that Dr. Hodurski's testimony is sufficient under Daubert and to defeat the motion for summary judgment because Dr. Hodurski has rendered an opinion that the constrained liner at issue was "incorrectly" designed and because his opinion is based upon his education and his "practical experience" as an orthopedic surgeon of many years. (See, e.g., Doc. No. 40 at 3-4.) For the reasons to follow, the court agrees with Smith & Nephew that Dr. Hodurski's testimony is insufficient to satisfy Daubert's requirements or to create a genuine issue of material fact on summary judgment.

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

As the parties are aware, in Daubert, *supra*, the Supreme Court of the United States charged trial judges with the responsibility of acting as gatekeepers to determine whether proposed expert testimony satisfies the dictates of Rule 702. In Daubert, the Supreme Court explained that the district court's gatekeeping responsibilities require the court to "determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592-93. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[4] Id.

---

[4] The Daubert court set out a number of non-exhaustive factors for the court to consider when determining whether proposed expert testimony is reliable. See Daubert, 509 U.S. at 589-93; see also Fed. R. Evid. 702 advisory committee's notes (2000 Amendments).

The Eleventh Circuit has "stress[ed] that the burden of laying the proper foundation for the admission of expert testimony rests with its proponent." Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1113 (11th Cir. 2005). Discussing the proponent's burden, the Cook court explained:

> Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough. The party offering the expert must present the witness' proposed testimony in a form that persuades the trial court that the testimony will in fact assist the trier of fact. As we have held previously, carrying this burden requires more than "the ipse dixit of the expert."

Id.

At this point, Plaintiffs' burdens under Daubert and under the summary judgment rules intersect. In the context of a non-movant's burden on summary judgment, the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value" and cannot defeat a well-supported motion for summary judgment. Evers v. General Motors, 770 F.2d 984, 986 (11th Cir. 1994). In Evers, a products liability lawsuit where the plaintiff claimed a vehicle's air bag system was defective, the court held that "a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." Id. The Eleventh Circuit concluded that the affidavit submitted by the plaintiff's expert witness "fail[ed] to provide specific facts to back up its

11

conclusory allegations" and that, therefore, "[s]ummary judgment was appropriate."[5] Id. at 986 & n.2.

Here, the court finds that the Eleventh Circuit's holdings in Cook and Evers are directly applicable to the facts of this case. As stated, Plaintiffs have designated Dr. Hodurski as their sole expert witness in this case. Dr. Hodurski, however, testifies only that he "think[s]" the constrained liner's "design is incorrect." (Dr. Hodurski Dep. at 28.) He has not described or identified any specific defect in the design of the constrained liner or even given a hint as to what he believes is "incorrect" about the design. His opinion is totally unsubstantiated by any facts, explanation or critique. Indeed, he is reluctant to offer an opinion that the constrained liner's design renders the product defective. (See id. ("I think the design is incorrect. Whether the product is defective, I don't know that.").)

---

[5] The Eleventh Circuit does not stand alone in rejecting as inadequate on summary judgment expert opinions which state only conclusions with no supporting facts. See, e.g., Matthiesen v. Banc One Mortgage Corp., 173 F.3d 1242, 1247 (10th Cir. 1999) ("The testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact."); Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996) (holding that "unsubstantiated conclusions" in affidavit of proposed expert insufficient to preclude summary judgment in favor of defendant); Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993) ("[I]n order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues"; "[a]lthough an expert affidavit need not include details about all of the raw data used to produce a conclusion . . ., it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment."); Mid-State Fertilizer v. Exchange Natl. Bank, 877 F.2d 1333, 1339 (7th Cir. 1989) (Where an expert presents "nothing but conclusions–no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected," the testimony is insufficient to defeat a motion for summary judgment.").

Plaintiffs endeavor to salvage their expert's conclusory opinion by stating that Dr. Hodurski's opinion is based upon his education and his experience as an orthopedic surgeon, (see Doc. No. 40 at 3), but the court finds that Plaintiffs' argument misses the mark. The court does not question Dr. Hodurski's qualifications as an orthopedic surgeon, nor does the court dispute that an expert's opinion may be based upon education and experience. See Fed. R. Evid. 702. Mere reference to that education and experience, though, is not a substitute for failing to disclose the factual basis of the expert's opinion. Dr. Hodurski's education and experience simply do not answer the question of what is defective about the constrained liner.

The court finds that Smith & Nephew has carried its initial burden on summary judgment by pointing to the absence of admissible expert testimony to support an essential component of Plaintiffs' case. See Fitzpatrick, 2 F.3d at 1115-16. The court also finds that Plaintiffs, as the proponents of the expert testimony and the non-movant on summary judgment, have had adequate time to conduct discovery in order to establish the basis of Dr. Hodurski's opinion, and Plaintiffs have not contended otherwise. See Celotex Corp., 477 U.S. at 322. The court, however, finds that Plaintiffs have not sustained their burden of presenting "affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, because Dr. Hodurski's opinion is conclusory and is devoid of any factual support. There simply is no evidence creating a genuine issue of material fact as to whether Smith & Nephew's constrained liner was defective or whether the injury to Mrs. Bloodsworth was caused by

a defect in the product.[6]  Likewise, the court finds that Plaintiffs have not met their

"burden of laying the proper foundation for the admission of expert testimony[.]"  Cook,

402 F.3d at 1113.

## VI.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendant Smith & Nephew, Inc.'s motion for summary judgment be and the same is hereby GRANTED with respect to all claims in Plaintiffs' complaint, all of which are contingent on the theory that the constrained liner's failure and Mrs. Bloodsworth's injuries are due to a design defect.

It is further CONSIDERED and ORDERED that Smith & Nephew, Inc.'s motion to strike Plaintiffs' expert disclosure and to exclude the expert opinion testimony be and the same is hereby GRANTED on the issue of Plaintiffs' failure to sustain their burden under Rule 702 of the Federal Rules of Evidence and Daubert, *supra*, but otherwise is DENIED as moot, see *supra* footnote 6.

Any and all other pending motions be and the same are hereby DENIED as moot.

---

[6] Smith & Nephew also moves to exclude Dr. Hodurski's testimony on the grounds that Plaintiffs did not comply with the court's scheduling order by timely identifying Dr. Hodurski as their expert and furthermore that the disclosure fails to satisfy the requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Although the court does not take lightly the parties' adherence to the deadlines and requirements set by the court and the governing procedural rules, the court need not address these procedural issues in order to resolve this case, and, accordingly, declines to do so.

A judgment in accordance with this Memorandum Opinion and Order shall be entered separately.

DONE this 20th day of November, 2006.

                                      /s/ Ira DeMent  
                                    SENIOR UNITED STATES DISTRICT JUDGE